IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RUTH DOLES,

           Plaintiff,

vs.                              Case No. 12-1257-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,[1]

           Defendant.


MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits. The matter has been fully briefed by the parties.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013, replacing Michael J. Astrue, the former Commissioner of Social Security.

1

scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or

mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If

the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

**II. History of case**

On November 21, 2011, administrative law judge (ALJ) Linda L. Sybrant issued her decision (R. at 13-19). Plaintiff alleges that she has been disabled since August 28, 2008 (R. at 13). Plaintiff is insured for disability insurance benefits through

4

December 31, 2013 (R. at 15).  At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since plaintiff's alleged onset date (R. at 15).  At step two, the ALJ found that plaintiff has the following severe impairments: degenerative disc disease of the cervical spine; weight disproportionate to height at 5'3" tall with weight ranging between 218 and 240 pounds; and chronic obstructive pulmonary disease (R. at 15).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 17).  After determining plaintiff's RFC (R. at 17), the ALJ determined at step four that plaintiff is able to perform her past relevant work (R. at 18-19).  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 19).

**III.  Did the ALJ err by failing to consider the opinions of Dr. Adams, Dr. Schulman and Dr. Bergmann-Harms regarding plaintiff's mental RFC?**

On November 15, 2010, Dr. Adams prepared a mental RFC assessment in which she opined that plaintiff had moderate impairments in the ability to understand, remember and carry out detailed instructions; in the ability to maintain attention and concentration for extended periods; and in the ability to interact with the general public.  Dr. Adams stated that plaintiff can complete simple tasks, is limited in working with the public, but can interact with co-workers and supervisors (R.

at 456-458). This assessment was affirmed by Dr. Schulman on February 8, 2011 (R. at 489), and by Dr. Bergmann-Harms on June 17, 2011 (R. at 583) (Doc. 16 at 8). This assessment, which was adopted by three medical sources, was never mentioned by the ALJ. Defendant concedes that this assessment was not discussed by the ALJ (Doc. 16 at 8-9). Dr. Adams, in a separate report, opined that plaintiff's depression was severe, and indicated that plaintiff had moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace (R. at 442-454). In making this finding, Dr. Adams referred to the diagnosis by Dr. Jordan, a consultative examiner, who, on July 22, 2010, diagnosed major depressive disorder, severe, without psychotic features (R. at 327, 454). Dr. Adams also noted that Dr. Risk, a treatment provider, diagnosed plaintiff on August 4, 2010 with major depressive disorder, severe, with psychosis (R. at 367-374, 454). This report was also adopted by Dr. Schulman and Dr. Bergmann-Harms (R. at 489, 583).

An ALJ must evaluate every medical opinion in the record. Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004). This rule was recently described as a "well-known and overarching requirement." Martinez v. Astrue, 2011 WL 1549517 at *4 (10th Cir. Apr. 26, 2011). Even on issues reserved to the Commissioner, including plaintiff's RFC and the ultimate issue

6

of disability, opinions from any medical source must be carefully considered and must never be ignored. Social Security Ruling (SSR) 96-5p, 1996 WL 374183 at *2-3. The ALJ "will" evaluate every medical opinion that they receive, and will consider a number of factors in deciding the weight to give to any medical opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c). It is clear legal error to ignore a medical opinion. Victory v. Barnhart, 121 Fed. Appx. 819, 825 (10th Cir. Feb. 4, 2005). Furthermore, according to SSR 96-8p:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts…and nonmedical evidence…
>
> The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved…
>
> The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.

1996 WL 374184 at *7.

According to the regulations, 20 C.F.R. § 404.1527(e)(2)(i) states that ALJ's must consider findings and opinions of nonexamining state agency medical and psychological consultants. Furthermore, 20 C.F.R. § 404.1527(e)(2)(ii) states that unless the treating source opinion is given controlling weight (which did not occur in this case), the ALJ "must" explain in the

decision the weight given to the opinions of state agency medical or psychological consultants. SSR 96-6p reiterates that ALJs may not ignore the opinions of state agency consultants, and must explain the weight given to these opinions in their decisions. 1996 WL 374180 at *1, 2.

Although an ALJ is not required to discuss every piece of evidence, the ALJ must discuss significantly probative evidence that he rejects. Clifton v. Chater, 79 F.3d 1007, 1009-1010 (10th Cir. 1996). Furthermore, the general principle that the ALJ is not required to discuss every piece of evidence does not control when an ALJ has opinion evidence from a medical source. In such a situation, the ALJ must make clear what weight he gave to that medical source opinion. Knight v. Astrue, 388 Fed. Appx. 768, 771 (10th Cir. July 21, 2010).

The ALJ found that plaintiff did not have any severe mental impairments, and apparently gave great weight to the testimony of Dr. Jonas, who testified at the hearing (R. at 29-35). The ALJ stated that Dr. Jonas testified to no more than mild symptoms (R. at 16). The ALJ later stated the following:

> The medical expert found little evidence to support a severe mental impairment and testified that the physical evidence does not support the claimant's allegations of severely limited functional capacity.

(R. at 18).

The record includes a consultative examination on July 22, 2010 done by Dr. Jordan, who diagnosed major depressive disorder, recurrent, severe, without psychotic features (R. at 325-327). Treatment records from July 21, 2011 from Dr. Carolina state that plaintiff's diagnosis is major depressive disorder, recurrent, severe, with psychotic features (R. at 584); this diagnosis was initially made on August 4, 2010 by Dr. Risk (R. at 367-374).

The record also contains a medical source statement-mental by Dr. Risk on October 20, 2010 which opines that plaintiff is markedly limited in 8 categories, and extremely limited in 3 categories (R. at 386-387). The ALJ, noting that it was prepared after a couple of treatment sessions, and that it came without any explanation, gave it no weight (R. at 18).

As the case law clearly indicates, a medical source opinion cannot be ignored, and it is clear error to ignore a medical opinion. In the case before the court, the ALJ rejected the opinions of a treatment provider regarding plaintiff's mental limitations (Dr. Risk). The record also contains a diagnosis by a consultative psychologist of major depressive disorder, recurrent, severe, with psychotic features (Dr. Jordan), and a diagnosis by treatment providers of major depressive, disorder, recurrent, severe, without psychotic features (Dr. Risk and Dr. Carolina). The state agency assessment adopted by three

9

medical sources relied on these diagnoses in finding that plaintiff had a severe mental impairment and various limitations due to that impairment. However, despite the contrary opinions of four medical sources, including a treatment provider, the ALJ apparently gave great weight to the opinions of a non-examining medical expert who found little evidence to support a severe mental impairment. On these facts, the failure to even mention a report adopted by three medical sources opining that plaintiff had a severe mental impairment with a number of limitations cannot be excused.

This case shall therefore be remanded in order for the ALJ to consider what weight should be accorded to this assessment adopted by three medical sources, and it should be weighed after taking into consideration all of the medical opinion evidence, including the diagnoses by Dr. Jordan, Dr. Risk and Dr. Carolina, and the medical source statement by Dr. Risk. The ALJ shall then make a determination of whether, in light of this assessment, plaintiff has a severe mental impairment. The ALJ shall also make RFC findings that explain what weight, if any, should be accorded to the opinions contained in the assessment.

**IV. Did the ALJ err in considering plaintiff's obesity?**

Plaintiff argues that the ALJ failed to consider plaintiff's obesity in making his RFC findings. SSR 02-1p is a social security ruling governing the evaluation of obesity. It

states that, when assessing RFC, obesity may cause limitations of various functions, including exertional, postural and social functions. Therefore, an assessment should also be made of the effect obesity has upon the claimant's ability to perform routine movement and necessary physical activity within the work environment. Obesity may also affect the claimant's ability to sustain a function over time. In cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity. 2002 WL 32255132 at *7. The discussion in the SSR on obesity and RFC concludes by stating that: "As with any other impairment, we will explain how we reached our conclusions on whether obesity caused any physical or mental limitations." 2002 WL 32255132 at *8.

In this case, the ALJ found that plaintiff's obesity (weight disproportionate to height) was a severe impairment (R. at 15), and her nocturnal hypoxemia is secondary to obesity, which is reversible with motivation (R. at 18). The ALJ's RFC findings then limited plaintiff to light work with various postural and environmental limitations (R. at 17). On the one hand, the ALJ did not explain in his decision how she reached her conclusion on whether obesity caused any physical or mental limitations. On the other hand, plaintiff has failed to point to any evidence in the record indicating that plaintiff's obesity resulted in limitations not included in the ALJ's RFC

findings. See Arles v. Astrue, 438 Fed. Appx. 735, 740 (10th Cir. Sept. 28, 2011); Warner v. Astrue, 338 Fed. Appx. 748, 751 (10th Cir. July 16, 2009). In light of the fact that this case is being remanded for other reasons, the court will direct the ALJ to explain how she reached her conclusion on whether obesity caused any physical or mental limitations, as required by SSR 02-01p. Furthermore, plaintiff should point to evidence in the record indicating what limitations are attributable to plaintiff's obesity.

**V. Did the ALJ err in his step four analysis?**

The court will not discuss this issue in detail because it may be affected by the ALJ's resolution of the case on remand after evaluating what weight should be accorded to the state agency assessment, and making RFC findings that either includes the limitations contained in the assessment, or that provides a legally sufficient explanation for not including those limitations. See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004).

If the ALJ again makes findings at step four, the ALJ shall make those findings in accordance with the case law and agency rulings. At step four, the ALJ is required by Social Security Ruling (SSR) 82-62 to make findings of fact regarding: 1) the individual's residual functional capacity, 2) the physical and mental demands of prior jobs or occupations, and 3) the ability

of the individual to return to the past occupation given his or her residual functional capacity. Henrie v. United States Dep't of HHS, 13 F.3d 359, 361 (1993). Thus, at the third or final phase of the analysis, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one. At each of these three phases, the ALJ must make specific findings. Frantz v. Astrue, 509 F.3d 1299, 1303 (10th Cir. 2007); Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996).[2] An ALJ can comply with these requirements if he quotes the VE's testimony with approval in support of his own findings at phases two and three of the step four analysis. Doyal v. Barnhart, 331 F.3d 758, 760-761 (10th Cir. 2003).[3] When the ALJ fails to make

---

[2] In Winfrey, the court noted that the Secretary glossed over the absence of the required ALJ findings by relying on the testimony of the vocational expert (VE) that plaintiff could meet the mental demands of his past relevant work, given his mental limitations as found by the ALJ. The court stated that this practice of delegating to a VE many of the ALJ's fact finding responsibilities at step four appears to be of increasing prevalence and is to be discouraged. The court went on to say as follows:

> Requiring the ALJ to make specific findings on the record at each phase of the step four analysis provides for meaningful judicial review. When, as here, the ALJ makes findings only about the claimant's limitations, and the remainder of the step four assessment takes place in the VE's head, we are left with nothing to review...a VE may supply information to the ALJ at step four about the demands of the claimant's past relevant work...[but] the VE's role in supplying vocational information at step four is much more limited than his role at step five...Therefore, while the ALJ may rely on information supplied by the VE at step four, the ALJ himself must make the required findings on the record, including his own evaluation of the claimant's ability to perform his past relevant work.

Winfrey, 92 F.3d at 1025.

[3] The ALJ's findings in Doyal were as follows:

> The vocational expert testified that the claimant's past relevant work as a housecleaner and sewing machine operator would be classified as light and

13

findings at phase two of step four regarding the physical and/or mental demands of plaintiff's past work, the case will be remanded for a proper step four analysis. Bowman v. Astrue, 511 F.3d 1270, 1271-1273 (10th Cir. 2008); Frantz v. Astrue, 509 F.3d at 1303-1304; Kilpatrick v. Astrue, 559 F. Supp.2d 1177, 1182-1185 (D. Kan. 2008)(Belot, D.J.). However, when the ALJ makes proper findings at step five, any error at step four will be deemed harmless error. Martinez v. Astrue, 316 Fed. Appx. 819, 824 (10th Cir. Mar. 19, 2009); see Murrell v. Shalala, 43 F.3d 1388, 1389-1390 (10th Cir. 1994).

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 7th day of August, 2013, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge

---

> unskilled, and her past relevant work as an activities director would be classified as light and semiskilled.... The vocational expert indicated that the claimant's past relevant work as a housecleaner and sewing machine operator did not require lifting more than 20 pounds, walking for prolonged periods, or performing tasks requiring bilateral normal grip strength.

Doyal, 331 F.3d at 760. The ALJ found that plaintiff could perform past relevant work as a housecleaner and a sewing machine operator. 331 F.3d at 761. As noted above, the ALJ cited with approval the testimony of the vocational expert concerning the physical demands of the 2 past jobs which the ALJ found that the claimant could still perform.